IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CRAIG EDWIN REMALEY,<br><br>    Plaintiff,<br><br>  vs.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>    Defendant. | Civil Action No. 2:19-1493 |

AMBROSE, Senior District Judge

## OPINION
## and
## ORDER OF COURT

### SYNOPSIS

Pending before the Court are Cross-Motions for Summary Judgment. [ECF Nos. 12 and 16]. Both parties have filed Briefs in Support of their Motions [ECF Nos. 13 and 19], and Plaintiff filed a Reply Brief [ECF No. 21]. After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am denying Plaintiff's Motion for Summary Judgment [ECF No. 12] and granting Defendant's Motion for Summary Judgment. [ECF No. 16].

### I. BACKGROUND

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act. Plaintiff applied for DIB and SSI on or about August 18, 2016. [ECF No. 10-8 (Exs. 1D, 2D)]. Plaintiff alleged that since June 15, 2016,[1] he had been disabled due to

---

[1] Plaintiff's alleged onset date was amended at the administrative hearing at his request. Originally, Plaintiff

1

fibromyalgia, anxiety, depression, and gout. [ECF No. 10-9 (Ex. 2E); ECF No. 10-3, at 37]. Administrative Law Judge ("ALJ") Daniel F. Cusick held a hearing on July 6, 2018, at which Plaintiff was represented by counsel. [ECF No. 10-4]. Plaintiff appeared at the hearing and testified on his own behalf. Id. A vocational expert also was present at the hearing and testified. Id. at 92-101. In a decision dated October 31, 2018, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled under the Act. [ECF No. 10-3, at 37-50]. Plaintiff requested review of the ALJ's determination by the Appeals Council, and the Appeals Council denied Plaintiff's request for review. [ECF No. 10-2]. Having exhausted all of his administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. [ECF Nos. 12 and 16]. The issues are now ripe for my review.

## II.  LEGAL ANALYSIS

### A.  STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Regardless of "the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (U.S. 2019). Substantial evidence has been defined as "more than a mere scintilla." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek, 139 S. Ct. at 1154. The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v.

---

indicated an onset date of August 16, 2016. [ECF Nos. 10-8, Exs. 1D, 2D, 11D; 10-3, at 37].

Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §§ 404.1520, 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity

(step 5). Id.

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

**B.   WHETHER THE ALJ IMPROPERLY DISREGARDED TREATING SOURCE EVIDENCE REGARDING PLAINTIFF'S ABILITY TO WALK**

Plaintiff argues that the ALJ erroneously failed to reconcile his conclusion that Plaintiff was able to occasionally climb ramps and stairs with the May 5, 2017 opinion of "treating source", Certified Registered Nurse Practitioner, Amy Lhote, that Plaintiff was unable to ambulate effectively, *i.e.*, that Plaintiff was unable to walk a block at a reasonable pace on rough or uneven surfaces, unable to walk enough to shop or bank, and unable to climb a few steps at a reasonable pace with the use of a single handrail. [ECF No. 13, at 9 (citing ECF No. 10-3, at 43-44 and ECF No.10-17 (Ex. 10F)]. This argument is without merit.

As an initial matter, as Defendant notes and the ALJ appropriately acknowledged, CNP Lhote was not considered an "acceptable medical source" under the regulations in effect at the time Plaintiff filed his claim. See 20 C.F.R. §§ 404.1502(a); 416.902(a); see also ECF No. 10-3, at 47 (citing Ex. 10F).[2] Only an "acceptable medical source" can be classified as a treating source or provide a medical opinion as defined in the regulations. See 20 C.F.R. §§ 404.1521, 416.921, 404.1527(a)(1), (2), 416.927(a)(1), (2). Thus, CNP Lhote's report is not a treating source opinion entitled to controlling weight.

Moreover, contrary to Plaintiff's assertions, the ALJ did not fail to explain why he disregarded CNP Lhote's statements concerning Plaintiff's ability to walk. In assessing a medical

---

[2] Although these regulations recently were amended to include licensed advanced practice registered nurses as acceptable medical sources within their licensed scope of practice, these amendments apply only to claims filed on or after March 27, 2017, and, thus, do not apply to Plaintiff's claims here. See 20 C.F.R. §§ 404.1502(a)(7); 416.902(a)(7).

4

source statement from a non-acceptable medical source, the ALJ "generally should explain the weight given" to the statement "or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." 20 C.F.R. §§ 404.1527(f)(2); 416.927(f)(2). Here, the ALJ did just that. Specifically, the ALJ explained that Dr. Lhote's medical source statement was given "little weight" because it was inconsistent with the medical evidence of record discussed elsewhere in the opinion; it was made by a non-acceptable medical source unfamiliar with the Social Security disability program and its evidentiary requirements; it was a check-box form unsupported by detailed explanations; and it was not consistent with the DDS opinions or Plaintiff's daily activities. [ECF No. 10-2, at 47 (citing Ex. 10F)]. These are appropriate reasons for discrediting a medical statement. The fact that the ALJ did not cite CNP Lhote by name does not alter this conclusion, since the ALJ clearly identified CNP Lhote's medical source statement by exhibit number.

In addition, the ALJ supported his finding that Plaintiff could occasionally climb ramps or stairs with substantial evidence. Among other things, the ALJ gave great weight to the opinion of the state agency medical consultant that, inter alia, Plaintiff could perform a less than full range of light work with standing/walking limited to two hours and occasional posturals, including occasional climbing of ramps and stairs. [ECF No. 10-2, at 47 (citing Exs. 1A, 2A)]. The ALJ also cited to Plaintiff's medical records reflecting conservative treatment, Plaintiff's noncompliance with treatment, and Plaintiff's daily activities in support of his RFC findings. See id. at 43-47 (citing Exs. 3E, 9D, 1F, 2F, 3F, 6F, 13F, 14F, 15F, 20F, and Hearing Testimony). For this reason as well, Plaintiff's argument fails.

C.     <u>**WHETHER THE ALJ ERRONEOUSLY FAILED TO ADDRESS CERTAIN IMPAIRMENTS AT STEP TWO OF THE EVALUATION**</u>

As set forth in 20 C.F.R. §§ 404.1521(a) and 416.921(a), an impairment or combination of

impairments[3] is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. The regulations define basic work activities as the abilities or aptitudes necessary to do most jobs. 20 C.F.R. §§ 404.1521(b), 416.921(b). Thus, an impairment is not severe if the evidence establishes only a slight abnormality that has no more than a minimal effect on an individual's ability to work. Newell, 347 F.3d at 546; Mays v. Barnhart, 78 F. App'x 808, 811 (3d Cir. 2003); S.S.R. 85-28. Although the Court of Appeals for the Third Circuit has commented that the Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny, it also has made clear that it does not suggest that a reviewing court apply a more stringent standard of review in such cases. McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). Rather, "[t]he Commissioner's denial at step two, like one made at any other step in the sequential analysis, is to be upheld if supported by substantial evidence on the record as a whole." Id. at 360-61.

At step two in this case, the ALJ found that Plaintiff had severe impairments, including fibromyalgia, gout, celiac disease, obesity, depression, and anxiety. [ECF No. 10-2, at 40]. Plaintiff, however, argues that the ALJ failed to address his thyroid disease, blood pressure problems, arthritis, and fatigue, as severe or non-severe impairments at step two of the analysis requiring remand. [ECF No. 13, at 9-12; ECF No. 21]. I disagree.

To the extent Plaintiff suggests the ALJ failed to consider his thyroid disease, hypertension, arthritis, and fatigue at all at step two, that suggestion is misplaced. Although the ALJ's opinion does not list these conditions by name, the ALJ plainly states that "*all other impairments*, other than those enumerated above, *alleged and found in the record*, are non-

---

[3] A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques . . . [and] must be established by objective medical evidence." 20 C.F.R. §§ 404.1521, 416.921. A mere diagnosis or subjective statement of symptoms alone is insufficient to demonstrate a medically determinable impairment for social security purposes. Id.

severe, as they have been responsive to treatment, cause no more than minimal vocationally-relevant limitations, and/or have not lasted or are expected to last at a 'severe' level for a continuous period of 12 months or expected to result in death." [ECF No. 10-2, at 40 (emphasis added)]. The ALJ further noted that he considered both Plaintiff's severe and non-severe impairments when formulating his RFC. Id.

Plaintiff likewise has failed to demonstrate that the ALJ erred in making this finding. Again, a mere diagnosis is insufficient to show severity. See Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 144 (3d Cir. 2007). Rather, the Plaintiff must show that the claimed impairments significantly limit his ability to do basic work activities or impair his capacity to cope with the mental demands of working. See id. Plaintiff did not list hypertension, thyroid condition, or arthritis (other than gout) as disabling impairments in his application and has not pointed to any vocationally relevant functional limitations related to those conditions that meet the severity standard and/or that the ALJ did not consider at step two or in the RFC analysis. Additionally, with respect to "fatigue," I agree with Defendant that Plaintiff is conflating a medically determinable impairment with a symptom thereof. [ECF No. 19, at 12-13 (citing S.S.R. 96-4p, 1996 WL 374187, at *1); see also 20 C.F.R. §§ 404.1529, 416.929]. In any event, the ALJ considered Plaintiff's fatigue as a symptom of his fibromyalgia. [ECF No. 10-2, at 43-44].

In addition, and in any event, the ALJ did not deny Plaintiff's application for benefits at step two of the analysis. Rather, the ALJ found in Plaintiff's favor at step two when he concluded that Plaintiff's fibromyalgia, gout, celiac disease, obesity, depression, and anxiety were severe impairments. [ECF No. 10-2, at 40]. The ALJ ruled against Plaintiff later in the sequential evaluation process, after concluding that his residual functional capacity was sufficient to enable him to perform jobs existing in the national economy. Id. at 48-49. Because the ALJ found in Plaintiff's favor at step two and proceeded with the sequential analysis, even if he had erroneously concluded that the above impairments were not severe, any such error was harmless. See Salles,

229 F. App'x at 144-45 & n.2 (citing Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005)).

D. **WHETHER THE ALJ FAILED TO PROPERLY ADDRESS THE LIMITATIONS REGARDING PLAINTIFF'S FIBROMYALGIA**

Plaintiff next argues that the ALJ failed to properly address the limitations regarding his fibromyalgia as required by SSR 12-2p, particularly in regard to Plaintiff's number of tender points. [ECF No. 13, at 12-15]. Plaintiff contends that the evidence regarding fibromyalgia dictates a finding of disability as of Plaintiff's alleged onset date or that the case be remanded for the taking of testimony by a Medical Expert. See id. After careful consideration, I find that remand is not warranted on this issue.

Social Security Ruling 12-2p was designed to provide "guidance on how we develop evidence to establish that a person has a medically determinable impairment (MDI) of fibromyalgia (FM), and how we evaluate FM disability claims and continuing disability reviews under titles II and XVI of the Social Security Act." SSR 12-2p, 2012 WL 3104869 (July 25, 2012). The regulation provides certain criteria for a finding of a medically determinable impairment of fibromyalgia[4] then states that, once an impairment is established, the ALJ engages in the five step sequential analysis. That is, "we consider the severity of the impairment, whether the impairment medically equals the requirements of a listed impairment, and whether the impairment prevents the person from doing his or her past relevant work or other work that exists in significant numbers in the national economy." SSR 12-2p. Here, the ALJ found that Plaintiff *does* suffer from fibromyalgia and that it *does* constitute a severe impairment. [ECF No. 10-2, at 40]. He then

---

[4] SSR 12-2p provides that to establish a medically determinable impairment of fibromyalgia, a physician must diagnosis fibromyalgia and satisfy one of two sets of criteria. Specifically, the claimant must demonstrate a history of widespread pain, at least 11 positive tender points on physical examination, and evidence that other disorders that could cause the symptoms or signs were excluded. In the alternative, the claimant must demonstrate a history of widespread pain, repeated manifestations of six or more fibromyalgia symptoms, and evidence that other disorders that could cause these symptoms were excluded. SSR 12-2p.

8

proceeded to engage in the remainder of the sequential analysis. Id. at 40-49. Because the ALJ agreed that Plaintiff's fibromyalgia was a severe medically determinable impairment, a more detailed discussion of Plaintiff's tender points was unnecessary. For these reasons, I find that the ALJ complied with SSR 12-2p. See Linke v. Berryhill, No. CV 17-937, 2018 WL 3574912, at *2–3 (W.D. Pa. July 25, 2018) (citing cases).

To the extent Plaintiff further alleges that the ALJ erred in evaluating his fibromyalgia at step three of the five-step analysis, that argument is unfounded. In step three of the analysis set forth above, the ALJ must determine if the claimant's impairment meets or is equal to one of the impairments listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1. Jesurum v. Sec'y of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995). An applicant is *per se* disabled if the impairment is equivalent to a listed impairment and, thus, no further analysis is necessary. Burnett v. Comm'r, 220 F.3d 112, 119 (3d Cir. 2000). It is the plaintiff's burden to prove a presumptively disabling impairment under the Listings. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, in accordance with SSR 12-2p, the ALJ expressly considered Plaintiff's fibromyalgia in his listings analysis at step three, providing as follows:

> With respect to the claimant's fibromyalgia, it cannot meet a listing because it is not a listed impairment. The undersigned has considered the entire adult Listings because fibromyalgia may cause symptoms or complications that are similar to other impairments considered under the Listing of Impairments. The undersigned finds that the claimant's fibromyalgia does not equal a listing, or medically equal a listing in combination with at least one other medically determinable impairment (SSR 12-2p).

[ECF No. 10-2, at 41]. Plaintiff's averment that the ALJ should have expressly discussed his fibromyalgia under Listings 14.09 or 1.02 is unpersuasive. An ALJ is not required to cite a specific Listing at step three, and his failure to do so is not fatal provided that his development of the record and explanation of findings in the opinion as a whole permit meaningful review of the step-three conclusion. See Jones v. Barnhart, 364 F.3d 501, 503-05 (3d Cir. 2004); Lopez v. Comm'r of Soc. Sec., 270 F. App'x 119, 121-22 (3d Cir. 2008).

Here, the ALJ specifically states that he considered Plaintiff's fibromyalgia in connection with the "entire adult Listings" and that the condition did not meet or equal any of those listings in Plaintiff's case. The ALJ's step three analysis combined with his extensive consideration of the evidence relevant to Plaintiff's fibromyalgia elsewhere in his opinion provides more than ample development of the record to permit meaningful review. After such review, I conclude that substantial evidence supports the ALJ's finding that Plaintiff's fibromyalgia is not disabling at step three or any other stage of the sequential analysis. See, e.g., ECF No. 10-2 (citing Exs. 1A, 2A, 2E, 3E, 9D, 1F, 2F, 3F, 5F, 6F, 13F, 14F, 15F, 16F, 20F, 21F, and Hearing Testimony). Because the ALJ engaged in a thorough analysis of Plaintiff's fibromyalgia supported by substantial evidence, I find no error in this regard.

Although Plaintiff cites a list of medical records in support of his claim that fibromyalgia is a disabling condition [ECF No. 13, at 12-15], I cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Rather, my job is to determine whether substantial evidence supports the ALJ's decision, which, as set forth above, it does. See Genes v. Colvin, No. CIV.A. 14-364, 2015 WL 251048, at *4 (W.D. Pa. Jan. 20, 2015) ("The standard of review, however, is not whether there is evidence to establish the Plaintiff's position. Rather, the standard is whether there is substantial evidence to support the ALJ's finding.").

Plaintiff's alternative argument that the ALJ should have called on a "medical expert" with respect to his fibromyalgia pursuant to SSR 12-2p, and that I should remand the case to allow for the same, is without merit. As Plaintiff himself acknowledges, the applicable portion of SSR 12-2p is discretionary, stating only that the Commissioner *may* retain a consultative examiner to help determine "if a person has an MDI (Medically Determinable Impairment) of FM (fibromyalgia) or is disabled . . . ." [ECF No. 13, at 15 (quoting SSR 12-2p)]. Further, this discretionary provision is directed only to situations where "there is insufficient evidence for us to determine whether the person has an MDI of [fibromyalgia] or is disabled." SSR 12-2p; see also id. (providing for the

discretionary purchase of a consultative examination "when we need this information to adjudicate the case"). As set forth above, this is not such a situation. Accordingly, the ALJ did not err by failing to obtain a consultative examination or call a medical expert in the proceedings below.

**E.     WHETHER THE ALJ ERRONEOUSLY BASED HIS DECISION ON IMPROPER VOCATIONAL EXPERT TESTIMONY**

Next, Plaintiff argues that the testimony of the vocational expert ("VE") at the hearing was flawed and, thus, that the ALJ erred in relying on it. [ECF No. 13, at 15-18]. Specifically, he contends that the VE based his testimony on flawed research "based upon the employment of workers with disability under special certificates" and that these jobs are not consistent with the Dictionary of Occupational Titles. Id. Plaintiff also complains that the VE failed to provide the DOT codes for Plaintiff's past work and that the hypothetical questions posed to the VE did not contain limitations consistent with the DOT and with light work. Id. This argument is without merit.

Regarding Plaintiff's concern that the VE failed to provide a DOT job code for his past relevant work, it is not a requirement that the VE do so. See Irelan v. Barnhart, 82 F. App'x 66, 72 (3d Cir. 2003). Moreover, and in any event, this issue is immaterial to the case at hand because the ALJ concluded that Plaintiff could not perform his past relevant work. [ECF No. 10-2, at 48].

Plaintiff further complains that, if the VE's testimony regarding the surveillance system monitor job was consistent with the DOT, then Plaintiff could not, in fact, do that job because it was a government job as coded. [ECF No. 13, at 16]. Again, however, this argument is immaterial because the ALJ did not cite surveillance systems monitor as one of the jobs existing in the national economy that Plaintiff could perform. See ECF No. 10-2, at 49 (citing sales attendant, furniture rental clerk, and cashier II).

Similarly, Plaintiff's assertion that the VE was confused about how much time an employee could spend off task, and that he relied on a code section applying to workers with disabilities under special certificates to explain the same, is without moment because the ALJ did not include

11

an off-task limitation in his RFC finding. It is well-settled that the law only requires the ALJ to accept a VE's responses to hypothetical questions that accurately reflect a claimant's limitations supported by the record. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987); Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). Because the ALJ did not rely on the VE's testimony concerning time spent off task, there is no material error on this issue.

Plaintiff's argument that the ALJ relied on an improper hypothetical question because the ALJ failed to ask the VE about whether Plaintiff could lift *and* carry 20 pounds occasionally (as opposed to just *lift* 20 pounds occasionally) is likewise nondispositive. As Defendant notes, the ALJ limited Plaintiff to a range of "light work" in the RFC finding. Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). Because light work does not involve carrying of 20 pounds, the ALJ was not required to obtain or rely on VE testimony on that point. Again, the law only requires the ALJ to include limitations supported by the record in his hypothetical question to the vocational expert. Chrupcala, 829 F.2d at 1276; Podedworny, 745 F.2d at 218. Here, the substantial evidence cited elsewhere herein shows that the limitations the ALJ adopted accurately reflected Plaintiff's impairments. See ECF Nos. 10-2, at 40-49 and evidence cited therein. Because the ALJ properly considered Plaintiff's limitations supported by the record, and the ALJ did not rely on a hypothetical question that inaccurately reflected those limitations, I find no error on this issue.

**F.   WHETHER THE ALJ'S DECISION, INCLUDING HIS ANALYSIS OF THE TREATING SOURCE CRITERIA, WAS SUPPORTED BY SUBSTANTIAL EVIDENCE**

Plaintiff's final argument consists of two conclusory paragraphs asserting that the ALJ failed to afford proper weight to his treating sources and, therefore, that his decision is not supported by substantial evidence. [ECF No. 13, at 19-20]. Specifically, Plaintiff complains that the ALJ did not address these physicians (rheumatologists Mitra and Lowther) and nurse

practitioner (CNP Lhote) by name and contends that, because, these are treating providers, their findings and opinions must be given great weight under the treating physician rule. See id. Plaintiff's bare-bones argument is without merit.

The amount of weight accorded to medical opinions is well-established. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to a non-examining source. 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). In addition, the ALJ generally will give more weight to opinions from a treating physician, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." Id. § 404.1527(c)(2). The opinion of a treating physician need not be viewed uncritically, however. Rather, only when an ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," must he give that opinion controlling weight. Id. Unless a treating physician's opinion is given controlling weight, the ALJ must consider all relevant factors that tend to support or contradict any medical opinions of record, including the patient/physician relationship; the supportability of the opinion; the consistency of the opinion with the record as a whole; and the specialization of the provider at issue. Id. § 404.1527(c)(1)-(6). "[T]he more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion." Id. § 404.1527(c)(4).[5]

In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has

---

[5] Although the regulations governing the evaluation of medical evidence have been amended, the version effective March 27, 2017, does not apply to the present claim. See 20 C.F.R. § 404.1527 (2017); 20 C.F.R. § 404.1520c (2017).

explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. Id. Similarly, under 20 C.F.R. § [404.1527]([c])(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

Becker v. Comm'r of Soc. Sec. Admin., 403 F. App'x 679, 686 (3d Cir. 2010). The ultimate issue of whether an individual is disabled within the meaning of the Act is for the Commissioner to decide. Thus, the ALJ is not required to afford special weight to a statement by a medical source that a claimant is "disabled" or "unable to work." See 20 C.F.R. § 404.1527(d)(1), (3); Dixon v. Comm'r of Soc. Sec., 183 F. App'x 248, 251-52 (3d Cir. 2006) ("[O]pinions on disability are not medical opinions and are not given any special significance.").

Here, the ALJ appropriately applied these principles to his analysis of the medical evidence, including the records of Drs. Mitra and Lowther and nurse practitioner Lhote. For the reasons already discussed supra, CNP Lhote was not an acceptable medical source and, therefore, the treating physician doctrine did not apply to her. See supra Section II.B and sources cited therein. Also, for the reasons already set forth above, the ALJ's evaluation of CNP Lhote's records and opinions was supported by substantial evidence. See id.

The ALJ's analysis of Drs. Mitra and Lowther was similarly appropriate. As an initial matter, Plaintiff never submitted opinions from Dr. Lowther directly to the ALJ. Rather, he submitted Dr. Lowther's opinion after the fact to the Appeals Council. [ECF No. 10-2, at 2, 31]. Therefore, the ALJ analyzed only the doctors' treatment notes and records in the record at the time of his decision. These are not medical opinions that triggered the above duties under 20 C.F.R. §§

14

404.1527 and 416.927. After careful review, and as set forth elsewhere in this opinion, I find that the ALJ properly evaluated these medical records and his evaluation of all of the medical opinions and other medical evidence of record was supported by substantial evidence. For example, among other things, the ALJ gave great weight to the opinion of state agency medical consultant that, <u>inter alia</u>, Plaintiff could perform a less than full range of light work with restrictions. [ECF No. 10-2, at 47 (citing Exs. 1A, 2A)]. The ALJ also cited to Plaintiff's medical records reflecting conservative treatment, Plaintiff's noncompliance with treatment, and Plaintiff's daily activities in support of his RFC findings. <u>See id.</u> at 43-47 (citing Exs. 3E, 9D, 1F, 2F, 3F, 6F, 13F, 14F, 15F, 20F, and Hearing Testimony).

For all of these reasons, I find that the ALJ did not err in his evaluation of the medical evidence, including evidence from Plaintiff's treating providers.

### III.     CONCLUSION

For all of the foregoing reasons, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied.   An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CRAIG EDWIN REMALEY, | ) |
| Plaintiff, | ) |
| vs. | ) Civil Action No. 2:19-1493 |
| ANDREW M. SAUL, Commissioner of Social Security, | ) |
| Defendant. | ) |

AMBROSE, Senior District Judge

## ORDER OF COURT

AND NOW, this 31st day of March, 2021, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that Defendant's Motion for Summary Judgment [ECF No. 16] is GRANTED, and Plaintiff's Motion for Summary Judgment [ECF No. 12] is DENIED. The decision of the Commissioner is hereby affirmed.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
U.S. Senior District Judge